# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| SHARYTA F.,[1] | : | Case No. 3:21-cv-00192 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

**I.   INTRODUCTION**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in October 2015. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. After the Appeals Council denied Plaintiff's request for review of that decision, Plaintiff filed an action with this Court.[2] The Court remanded the case to the Commissioner under Sentence Four of 42 U.S.C. § 405(g). The Appeals Council remanded the case pursuant to the District Court's order.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] Assigned to Judge Michael J. Newman, Case Number 3:19-cv-00130.

The ALJ held another hearing and again concluded that Plaintiff was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review of that decision, and Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's Statement of Errors (Doc. 9), the Commissioner's Memorandum in Opposition (Doc. 12), Plaintiff's Reply (Doc. 13), and the administrative record (Doc. 8).

## II. BACKGROUND

Plaintiff asserts that she was under a disability from April 1, 2015, to July 1, 2019.[3] During the requested closed period of disability, she was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[4] Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 8-8, PageID 918-34), Plaintiff's Statement of Errors (Doc. 9), the Commissioner's Memorandum in Opposition (Doc. 12), and Plaintiff's Reply (Doc. 13). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

---

[3] Plaintiff initially alleged disability beginning January 1, 2006. (Doc. 8-5, PageID 233.) She subsequently amended her alleged disability onset date and requested a closed period of disability from April 1, 2015, to July 1, 2019. (Doc. 8-11, PageID 1134.)

[4] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

### III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the

3

evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. FACTS

### A. The ALJ's Findings of Fact

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since April 1, 2015, the amended alleged onset date.

Step 2: She has the severe impairments of orthostatic hypotension, neurocardiogenic syncope, migraine headaches, bipolar/depressive disorder, and anxiety disorder.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of a full range of work at all exertional levels, subject to the following non-exertional limitations: "(1) limited to simple, routine, and repetitive tasks, performed in a work environment free of fast-paced production requirements, work-related decisions, with few, if any, workplace changes; and (2) limited to only occasional interaction with the public and only occasional interaction with co-workers with no tandem tasks."

She is unable to perform any of her past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

(Doc. 8-8, PageID 921-33.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 933-34.)

### B. Spinal Condition

The ALJ addressed Plaintiff's neck pain allegations at Step 2 but found that the record did not establish a medically determinable impairment (MDI) related to these complaints. (Doc. 8-8, PageID 927-28.) The ALJ reasoned:

> [Plaintiff] was diagnosed with cervicalgia on July 14, 2016. However, she appears to have improved with medication, and more recent medical records reveal [Plaintiff] to generally have normal neck with full range of motion, no tenderness, and no evidence of further treatment for this condition, despite the claimant's allegation of recent x-rays for the neck (9F/8, 22, 29-32; 10F/34; 17F/17-22). In order to be a "medically determinable impairment" for Social Security purposes, an alleged condition must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques (Social Security Ruling 96-4p) and cannot be established on the basis of symptoms alone (20 CFR 404.1529, 416.929). Social Security Regulations provide that an individual's symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect the individual's ability to do basic work activities (or, for an individual under age 18 claiming disability benefits under title XVI, to function independently, appropriately, and effectively in an age-appropriate manner) unless medical signs and laboratory findings show that there is a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptom(s) alleged. Thus, regardless of how many symptoms an individual alleges, or how genuine an individual's complaints appear to be, the existence of a medically determinable impairment cannot be established in the absence of objective medical abnormalities, i.e. medical signs or clinical findings. For the reasons stated above, the medical evidence of record does not establish a medically determinable impairment with regard to these allegations.

(*Id.*)

### C. Migraine Headaches

The ALJ concluded that migraine headaches constituted a "severe" impairment as defined in 20 C.F.R. § 404.1520(c). (Doc. 8-8, PageID 922.) The ALJ addressed these

headaches and discussed Social Security Ruling (SSR) 19-4p in Step 2, but did so in the context of whether Plaintiff's headaches medically equal a Listing in Step 3:

> Primary headache disorder is not a listed impairment, however, it may medically equal Listing 11.02, pursuant to SSR 19-4p. For Listing 11.02B, we consider: a detailed description from an acceptable medical source of a typical headache event, including associated phenomena, such as aura, duration, intensity, and accompanying symptoms; the frequency of headache events; adherence to prescribed treatment; side effects of treatment, such as drowsiness, confusion, or inattention; and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day, a need for a darkened quiet room, having to lie down without moving, or other related needs and limitations. For Listing 11.02D, we consider the overall effects of the primary headache disorder on functioning results in marked limitations in: physical functioning; understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

(*Id.*) The ALJ then made findings about Plaintiff's headache disorder:

> [Plaintiff] has a diagnosis for migraine headaches (9F/13, 26F/24). She endorses more headache pain on the left-side with mild nausea, but no vomiting, and intermittent photophobia and phonophobia (though more often phonophobia) (9F/76, 10F/28, 14F/7). [Plaintiff] originally reported experiencing three headaches per week (9F/11, 24-26). She demonstrates less headaches with both Topamax, which she reported lessened her headaches to once weekly, and Imitrex (9F/4, 13, 16). Objective imaging and physical examinations have been completely normal (9F/20, 59).

(*Id.*)

At Step 3, the ALJ provided no additional analysis about Plaintiff's headaches, including whether they medically equal a Listing. (Doc. 8-8, PageID 928-29.)

In the RFC assessment, the ALJ discussed Plaintiff's headaches when evaluating the State agency medical consultants' findings:

> Two physicians, Gerald Klyop, M.D., and David Knierim, M.D., evaluated [Plaintiff's] physical functioning based upon the evidence of record (1A,

7

2A, 5A, 6A). Dr. Klyop and Dr. Knierim were of the opinion that the claimant suffers from no "severe" physical impairments (1A, 2A/8, 5A, 6A/7). I assign the opinions of Dr. Klyop and Dr. Knierim no weight. Dr. Klyop and Dr. Knierim based their opinions upon their examination of the record, their expertise, and program knowledge. However, the treatment record shows consistent treatment for hypotension and syncope (18F/6, 20F/4), and migraine headaches (26F/24). Though her hypotension and syncope are stable (17F/6, 18F/10), there is documentation of symptoms such as morning dizziness, dizziness upon standing, and passing out (1F/5-7). ***Further, though reduced in the number of migraine headaches (9F/16), she still experiences some migraine symptoms, such as mild nausea (14F/7).*** [Plaintiff] obviously has impairments that cause more than minimal vocational limitation, and thus, "severe" physical impairments.

Consequently, I find that [Plaintiff] retains the capacity to perform the basic exertional activities associated with work at all exertional levels. In addition, I find that [Plaintiff] should work within the confines of the additional limitations defined by the residual functional capacity to avoid undue risk of injury or exacerbation in light of her severe impairments.

(Doc. 8-8, PageID 929 (emphasis added).)

The ALJ also referred to Plaintiff's headaches in the symptom severity analysis:

After careful consideration of the evidence, I find that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported. As noted above, [Plaintiff's] testimony is not consistent with the medical file. ***[Plaintiff's] physical impairments show that she is having much fewer migraine headaches, and showing stable hypotension, and no recurrent episodes of syncope.*** Further, the claimant's mental impairments show that she has improved from, at most, moderate severity to mild severity. The claimant has consistently worked during the entirety of the requested closed period.

(Doc. 8-8, PageID 931 (emphasis added).)

8

## V. LAW AND ANALYSIS

Plaintiff asserts the following errors: 1) the ALJ reversibly erred by failing to evaluate the psychiatric medical source opinions (specifically the opinion of S. Jean Budding, C.N.S.-B.C.) and medical evidence; 2) the ALJ's RFC is unsupported by substantial evidence, and the ALJ reversibly erred by failing to consider a closed period of disability; and 3) the ALJ reversibly erred in determining that Plaintiff does not meet or equal Listing 11.02. (Doc. 9, PageID 1558, 1567-72.) Finding error in the ALJ's analysis of Plaintiff's spinal condition and headaches, the Court does not address Plaintiff's other errors and instead instructs the ALJ to address all of them on remand.

### A. Spine Condition

#### *1. Applicable Law*

A claimant's residual functional capacity (RFC) is the most he can do in a work setting despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is reserved for the ALJ. 20 C.F.R. § 416.946(c). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC assessment on all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). Relevant evidence includes "information about the individual's symptoms and any 'medical source statements'—i.e., opinions about what the individual can still do despite his or her impairment(s)—submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p, 1996 SSR LEXIS 5, *5-6 (July 2, 1996). "If the

9

RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id*. at *20.

Social Security rules and regulations provide that symptoms alone cannot establish the existence of a medically determinable impairment (MDI). 20 C.F.R. § 404.1521; *see also* 20 C.F.R. § 404.1529(b). Rather, a physical or mental impairment must result from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical laboratory diagnostic techniques." 20 C.F.R. § 404.1521. The impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*

An ALJ will determine whether an impairment is "severe" only after establishing the existence of an MDI. 20 C.F.R. § 404.1521. An impairment is severe if the impairment, or combination of impairments, "significantly limits" the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1522(a). The ALJ will consider symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, when determining whether a claimant's impairment or combination of impairments is severe. 20 C.F.R. § 404.1529(d)(1). The Sixth Circuit views the Step Two severity evaluation "as a de minimis hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

> 2. ***The ALJ's analysis of Plaintiff's spinal condition is not supported by substantial evidence.***

Plaintiff contends that the ALJ erred by failing to find that cervicalgia is a "severe" impairment. (Doc. 9, PageID 1570.) This argument is well-taken. The ALJ

10

concluded that no "objective medical abnormalities, i.e. medical signs or clinical findings" supported the diagnosis of cervicalgia. (Doc. 8-8, PageID 928.) The ALJ reasoned that Plaintiff's neck condition "appears to have improved with medication, and more recent medical records reveal the claimant to generally have normal neck with full range of motion, no tenderness, and no evidence of further treatment for this condition, despite the claimant's allegation of recent x-rays for the neck." (*Id.* at PageID 927.)

The ALJ's finding is inconsistent with objective medical evidence in the record. For example, September 2020 hospitalization discharge notes indicate that a search of the Epic Care electronic medical records software found a May 2008 MRI of the cervical spine. (Doc. 8-3, PageID 1461.) The report showed evidence of a prior cervical fusion at the C5-6 level in January 2004, as well as mild spondylitic changes and a slightly increased signal in the spinal cord from C4 to C6. (*Id.*) The record also contains cervical spine imaging that was taking during the requested closed period, in December 2017. (Doc. 8-3, PageID 1556.) In addition to confirming the prior cervical fusion at C5-6, this report showed progression of the anterior endplate spurring and disc space narrowing at the C3-4 and C5-7 levels. (*Id.*) Also documented were disc space narrowing and hypertropic endplate spurring at the C3-4 and C6-7 levels. (*Id.*)

The "more recent" records that the ALJ cited—which he contends document a "normal neck" with full range of motion and no tenderness—are dated only through May

11

2017. (Doc. 8-8, PageID 927, citing Doc. 8-7, PageID 632, 646, 653-55, 834.[5]) Several examinations dated *after* that time period showed abnormalities that included cervical spine muscle spasms, right trapezius pain and spasms, low back pain with lumbar spine muscle spasms, positive straight leg raising, and decreased strength. (*E.g.,* Doc. 8-13, PageID 1236, 1549, 1557.) This evidence contradicts the ALJ's finding that no objective medical abnormalities supported Plaintiff's neck pain complaints and the cervicalgia diagnosis. Therefore, the ALJ's conclusion is not supported by substantial evidence.

Defendant argues: "[Plaintiff] fails to cite to any medical opinion imposing physical limitations, and she does not identify specific limitations the ALJ should have included in her RFC . . . ." (Doc. 12, PageID 1595 (citing Doc. 9, PageID 1569-71).) This argument is not well-taken. There is no requirement that a claimant must point to a medical opinion that supports specific limitations, or otherwise identify those limitations. Instead, it is the ALJ who is charged with the responsibility of assessing a claimant's RFC based on the evidence as a whole. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

Defendant's cited case of *Roberts v. Comm'r of Soc. Sec.*, No. 1:19-cv-734, 2020 WL 5875869, at *5 (S.D. Ohio Oct. 2, 2020) (Litkovitz, M.J.) is inapposite. (*See* Doc. 12, PageID 1595.) In *Roberts*, the plaintiff argued that the ALJ should have given more weight to a particular medical opinion because the longitudinal medical record provided more support for that opinion than the opinion that the ALJ relied upon. *Id*, *5. The Court

---

[5] The ALJ also cited to "17F/17-22" as an example of a normal examination. (Doc. 8-8, PageID 927.) But Exhibit 17F contains only seven pages (*see* Doc 8-7, PageID 900-06), so it is unclear which exhibit the ALJ intended to cite. Nevertheless, the additional examination abnormalities discussed above do not support the ALJ's conclusion that "more recent" records showed normal examinations.

12

disagreed, stating: "Plaintiff has not shown how these records support a disability finding, or how these records support further physical limitations in the RFC than the ALJ assessed." *Id*. This statement does not mean, as the Commissioner argues, that ***claimants*** must identify particular RFC limitations. Instead, the Court simply reiterated the well-accepted proposition that ***litigants*** must explain and support their arguments.

In sum, the ALJ erred by finding that there is no cervical MDI because substantial evidence does not support that conclusion. Accordingly, reversal is required.

### B. Migraine Headaches

#### 1. *Applicable Law*

Plaintiff also challenges the ALJ's conclusion that his migraine headaches did not meet or equal a Listed impairment. A claimant will be found "disabled" at Step Three of the sequential evaluation if his impairment meets or equals one of the listings in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). A claimant must satisfy all the specified criteria to "meet" the listing. *Id.* A claimant is also disabled if his impairment "equals" the listing; that is, if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1520(a)(4)(iii), 404.1526(a).

Plaintiff has the burden at Step 3 to show she has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, App. 1. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20

13

C.F.R. § 404.1520(a)(4)(iii). If a claimant meets all the criteria of a listed impairment, she is disabled; otherwise, the evaluation proceeds to Step Four. 20 C.F.R. § 404.1520(d)-(e); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *Rabbers*, 582 F.3d at 653.

The ALJ "must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011). The Sixth Circuit has emphasized that the ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Id*, 424 F. App'x at 416. Otherwise, "it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id*.

Social Security Ruling (SSR) 19-4p governs an ALJ's consideration of headache disorders in the Sequential Evaluation.[6] SSR 19-4p, 2019 WL 4169635 (August 26, 2019). At Step 3, SSR 19-4p indicates that a primary headache disorder is not a listed impairment. 2019 WL 4169635, at *7. However, a listing is medically equaled if "a primary headache disorder, alone or in combination with other impairment(s), medically equals a listing." *Id.* The SSR instructs that Listing 11.02 (paragraph B or D for dyscognitive seizures) is the "most closely analogous listed impairment" for an MDI of a primary headache disorder. *Id.* In pertinent part, this Listing describes:

> B.   Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite

---

[6] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

14

>  adherence to prescribed treatment (see 11.00C). . . .
>
>  \*\*\*\*\*
>
>  D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>
>  1. Physical functioning (see 11.00G3a); or
>  2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>  3. Interacting with others (see 11.00G3b(ii)); or
>  4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>  5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. § Part 404, Subpt. P, App. 1, § 11.02.

In determining whether a primary headache disorder is equivalent to Listing 11.02B, the ALJ is required to consider:

> [a] detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, 2019 WL 4169635, at \*7. To determine whether a primary headache disorder is equal in severity to Listing 11.02D, the ALJ should consider the 11.02B factors, as well as whether the overall effects of the primary headache disorder results in marked limitation of functioning in the five areas identified above. *Id.*

15

> ### 2. *The ALJ's finding regarding the frequency of Plaintiff's migraine headaches is not supported by substantial evidence, and the ALJ's analysis did not comply with the applicable legal framework*

Plaintiff argues that the ALJ erred in his Step Three analysis of migraine headaches. (Doc. 9, PageID 1571-72.) This contention is also well-taken.

The ALJ acknowledged that Plaintiff "originally reported experiencing three headaches per week" but found that Plaintiff's use of Topamax and Imitrex reduced her headaches "to once weekly." (Doc. 8-8, PageID 922.) This finding is not supported by substantial evidence. Plaintiff told her provider in September 2016 that she experienced at least three migraines per week, despite taking Imitrex. (Doc. 8-7, PageID 648.) A few months later in November 2016, Plaintiff did indeed tell her provider that her headache frequency had decreased to once per week on Topamax. (Doc. 8-8, PageID 922, citing Doc. 8-7, PageID 640.) But less than two months after that, in January 2017, Plaintiff told her primary care provider that she was again experiencing headaches three times per week, although "not as severe." (Doc. 8-7, PageID 635.) She was still taking Imitrex and Topamax in May 2017, but she reported that she was continuing to have migraines, as well as other types of headaches and neck pain. (Doc. 8-7, PageID 628.) During an emergency room visit for a migraine later that month, Plaintiff said she usually had four to five migraines per week. (Doc. 8-7, PageID 797.) Plaintiff told the physician that was treating her syncope in June 2017 that she was still having headaches. (Doc. 8-7, PageID 843). Meanwhile, Plaintiff sought emergency treatment for migraine headaches on several occasions between July 2016 and July 2017. (*E.g.,* Doc. 8-7, PageID 685, 694, 699, 700, 705, 708, 722, 793, 870.)

16

In addition, the ALJ did not conduct the analysis required by the applicable legal framework. The Sixth Circuit has held that the ALJ must "***actually*** evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds*, 424 F. App'x at 416 (emphasis added). The ALJ did not do so. Therefore, his finding is not supported by substantial evidence and reversal is required. *Id*.

## VI. CONCLUSION

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to Plaintiff's migraine headaches and spine condition, and evaluate the evidence of record under the applicable legal criteria mandated by the

17

Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 9) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.

        */s/ Caroline H. Gentry*
        Caroline H. Gentry
        United States Magistrate Judge